# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ESTEEM OF JAMES HENRY TOLLIVER, JR., | }<br>}<br>} |
| **Plaintiff,** | }<br>} Case No.: 2:19-cv-00497-RDP |
| v. | }<br>} |
| **REGIONS BANK, et al.,** | }<br>} |
| **Defendants.** | } |

## MEMORANDUM OPINION

This case is before the court on Defendant Regions Bank's motion to dismiss. (Doc. # 2). For the reasons explained below, the motion is due to be granted in part and denied in part.

## I. Background[1]

James Henry Tolliver, Jr. had two daughters. (Doc. # 1-1 at 52). In April 2017, Tolliver apparently executed a power of attorney naming one of his daughters, Tangela Tolliver Levinson, as his agent. (Doc. # 3-1 at 2-8).[2] The power of attorney bears the signature and seal of a notary public who certified that Tolliver acknowledged before her that he knowingly and voluntarily executed the power of attorney. (*Id.* at 6). The power of attorney was filed in the

---

[1] For purposes of ruling on Regions' motion to dismiss, the court treats the factual allegations of the operative complaint (Doc. # 1-1 at 52-66) as true, but not its legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[2] Though Plaintiff did not attach the power of attorney to the complaint, the instrument is referenced repeatedly throughout the complaint (Doc. # 1-1 at 53-54, 59-60), and Regions attached the instrument to its motion to dismiss (Doc. # 3-1 at 2-8). As explained in more detail below, the court concludes the power of attorney is both central to Plaintiff's claim and undisputed, and the court may therefore consider the document without converting Regions' motion to dismiss into a motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Additionally, because the power of attorney was filed in the Jefferson County Probate Court, it is a public record of which the court may take judicial notice. *Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006).

Jefferson County Probate Court on April 24, 2017. (*Id.* at 2). Like most powers of attorney, this one grants broad authority to the agent over the principal's affairs, including "Banks and Other Financial Institutions." (*Id.* at 3).

Sometime after the power of attorney was executed, Regions Bank added Levinson as a co-owner on Tolliver's account. (Doc. # 1-1 at 54, ¶ 9). Regions also issued Levinson a debit card for the account and "changed survivorship/ownership" on the account. (*Id.*). Levinson then went on quite a spending spree, withdrawing thousands of dollars from ATMs, purchasing luxury items everywhere from Louis Vuitton in New York to Moncler in Beverly Hills, and writing thousands of dollars' worth of checks from the account. (*Id.* at 55, ¶ 13). During this time, Regions sent account statements only to Levinson, not to Tolliver. (*Id.* at 54, ¶ 10).

Tolliver later died on August 29, 2018. (*Id.* at 54-55, ¶ 12). Tolliver's other daughter, Ashley Jackson, was appointed as personal representative of his estate in the Jefferson County Probate Court. (*Id.* at 52, ¶ 1). Regions has refused to refund to the estate funds spent from Tolliver's account by Levinson. (*Id.* at 54, ¶ 11). Plaintiff also alleges that Regions has refused to provide requested documents and information to the estate (*id.* at 55, ¶¶ 14-15), though Regions maintains it has fully complied with all subpoenas it has received and even offered to provide bank statements for Tolliver's account, an offer it claims remains open (Doc. # 3 at 14-15).

Tolliver's estate brought this lawsuit against both Levinson and Regions Bank.[3] As relevant to the pending motion to dismiss, Plaintiff has asserted three claims against Regions: (1) breach of contract, (2) a claim under the federal Electronic Funds Transfer Act ("EFTA"), and (3) a claim for declaratory relief. The breach-of-contract claim asserts that, by adding Levinson to the account, Regions breached its initial bailment agreement with Tolliver to safeguard his

---

[3] As explained below, the proper party to this lawsuit is Jackson, the personal representative of Tolliver's estate, rather than the estate itself. The court therefore refers to Plaintiff as "she" or "her" rather than "it."

2

assets and prevent unauthorized access to and transactions on the account. (Doc. # 1-1 at 64-65, ¶¶ 38-39). Plaintiff claims Regions violated the EFTA by (1) permitting unauthorized electronic fund transfers by Levinson; (2) failing to send periodic account statements to Tolliver from April 2017 onward; (3) failing to investigate and respond to Plaintiff's inquiries into potential unauthorized electronic fund transfers; and (4) failing to refund the money spent from Tolliver's account by Levinson. (*Id.* at 55, ¶ 14; 62-63, ¶ 33). And finally, Plaintiff's count for declaratory relief asserts that Regions has refused to turn over documents relating to Tolliver's account and requests "an accounting of said funds and a declaration of the parties' rights." (*Id.* at 61-62, ¶¶ 28-30).

## II. Legal Standard

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not satisfy Rule 8, and neither do pleadings that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the nonmoving party. *Watts v. Fla. International Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136,

138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific, and to survive the motion, the allegations must permit the court, based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims must be dismissed. *Twombly*, 550 U.S. at 570.

## III. Analysis

Regions' motion to dismiss requires the court to decide two basic issues. The first is whether Tolliver's estate has the capacity to bring this lawsuit. The second is whether any of the counts in Plaintiff's complaint state a plausible claim for relief. The court address each issue in turn.

### A. Plaintiff Lacks the Capacity to Sue, But There Should Be an Opportunity to Amend the Complaint

Regions first argues that Tolliver's estate lacks the capacity to bring this lawsuit under Alabama law. Federal Rule of Civil Procedure 17(b) provides that an estate's "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located." Under Alabama law, "[a]n action filed on behalf of the estate must be brought by the executors." *Douglass v. Jones*, 628 So. 2d 940, 941 (Ala. Civ. App. 1993) (citing *Stone v. Jones*, 530 So.2d 232 (Ala. 1988)); *see also* 34 C.J.S. EXECUTORS AND ADMINISTRATORS § 847 ("An estate is not a person or a legal entity and cannot sue or be sued; an estate can only act by and through a personal representative and therefore any action must be brought by or against the executor or representative of the estate."). For this reason, the complaint as currently pleaded names the wrong party as Plaintiff. (Doc. # 1-1 at 52) (naming "the Estate of James Henry Toliver, Jr" as plaintiff rather than Ashley Jackson, the estate's personal representative).

Regions argues the entire lawsuit should be dismissed on this basis, but the proper course is to permit an amendment of the complaint to name the correct plaintiff. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires."). Thus, the court will require counsel for plaintiff to file an amended complaint on or before June 21, 2019, naming the correct party (Ashley Jackson, as personal representative of Tolliver's estate) as Plaintiff.

### B. Dismissal of Plaintiff's Breach-of-Contract Claim Would Be Premature

Plaintiff's breach-of-contract claim is based on the allegation that, by adding Levinson to Tolliver's account without his permission, Regions breached its initial bailment agreement with Tolliver to safeguard his assets and prevent unauthorized transactions on the account. Regions responds that it relied upon the power of attorney Tolliver executed naming Levinson as his agent and is therefore exonerated from all liability under the Alabama Uniform Power of Attorney Act ("UPAA").

The Act provides:

> **A person that effects a transaction in reliance upon an acknowledged power of attorney** *without actual knowledge* that the power of attorney is void, invalid, or terminated, that the purported agent's authority is void, invalid, or terminated, or that the agent is exceeding or improperly exercising the agent's authority **is fully exonerated from any liability** for effecting the transaction in reliance upon the power of attorney as if the power of attorney were genuine, valid, and still in effect, the agent's authority were genuine, valid, and still in effect, and the agent had not exceeded and had properly exercised the authority.

Ala. Code § 26-1A-119(c) (emphasis added). The Act defines "person" to include a "corporation." *Id.* § 26-1A-102(6). The Act further defines an "acknowledged" power of attorney as one "purportedly verified before a notary public." *Id.* § 26-1A-119(a). Thus, under the Act, if in adding Levinson to Tolliver's account Regions (1) *relied* upon a power of attorney that (2) was *purportedly* verified before a notary public, and (3) did not have *actual knowledge* that

5

Levinson was misusing the power of attorney, it is absolved of all liability under Alabama state law.

It is undisputed that the power of attorney allegedly executed by Tolliver in favor of Levinson was "purportedly verified before a notary public"—the instrument bears the signature and seal of an Alabama notary public and was filed in the Jefferson County Probate Court. (Doc. # 3-1). In her response brief, Plaintiff disputes the validity of the power of attorney and states that she "is not aware of whether the notary recital is accurate and whether [Tolliver] actually signed [the] document in the presence of [the] notary." (Doc. # 8 at 2). But all that matters for purposes of Regions' liability is whether the power of attorney was "*purportedly* verified before a notary public"—not whether it actually was. Ala. Code § 26-1A-119(a) (emphasis added). Thus, the court may properly consider the power of attorney instrument on this motion to dismiss because it is central to Plaintiff's claim and because its legally relevant feature—the existence of a purported notary recital—is not disputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). The court may also consider the power of attorney because it was filed in the Jefferson County Probate Court and is thus a public record of which the court may take judicial notice. *Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (holding that district court properly took judicial notice of court filing in ruling on motion to dismiss).

But there remain two key factual questions that must be resolved to determine whether Regions is immune from liability under the UPAA: (1) whether Regions *relied* upon the power of attorney in adding Levinson to Tolliver's account and (2) whether Regions had *actual knowledge* that Levinson was misusing the power of attorney. The court is unable to resolve these question on the Rule 12(b)(6) record, and dismissal at this stage would therefore be improper.

As to the first issue, the complaint is silent regarding whether Levinson presented the power of attorney to Regions when she was added to Tolliver's account. The complaint simply says that Regions "added [Levinson] to [Tolliver's] account . . . without authority to do [so]." (Doc. # 1-1 at 54, ¶ 9). To be sure, it seems unlikely that Levinson simply walked into Regions and asked to be added to her father's account without producing the power of attorney to Regions, but the point is that key fact is not currently in the Rule 12(b)(6) record. And Regions can only claim immunity if it in fact *relied* upon the power of attorney in adding Levinson to the account.

As to the second issue, the complaint is likewise silent regarding whether, at the time it added Levinson to Tolliver's account, Regions had "actual knowledge that the power of attorney [was] void, invalid, or terminated, that [Levinson's] authority [was] void, invalid, or terminated, or that [Levinson was] exceeding or improperly exercising [her] authority" under the power of attorney. Ala. Code § 26-1A-119(c). Regions may assert that it is unlikely it knew Levinson was exceeding or improperly exercising her authority under the power of attorney when it added her to Tolliver's account. (What bank employee would add someone to an account *knowing* that the person was exceeding or improperly exercising her authority under a power of attorney?) But the Rule 12(b)(6) record before the court does not permit this inference, and Regions must therefore offer some evidence showing it was "without [such] actual knowledge." *Id.* At this stage, Regions has not yet shown it is entitled to immunity under the UPAA. Accordingly, a limited period of discovery will be necessary on these key facts to determine whether the UPAA exonerates Regions from all liability under state law.

One further point bears mentioning here. A plaintiff generally has no burden to plead facts negating possible affirmative defenses to survive a Rule 12(b)(6) motion. *La Grasta v. First*

*Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Though Alabama's courts have not specifically addressed the issue, the UPAA appears to be an affirmative defense. The Act does not amend substantive state-law causes of action to require plaintiffs (in every case) to plead and prove that the defendant did *not* rely on an acknowledge power of attorney in taking the challenged action. It instead merely offers defendants a defense they may raise to defeat an otherwise valid state-law claim. *See Defense*, Black's Law Dictionary (11th ed. 2019) (defining an affirmative defense as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true"). Thus, a defendant charged with breaching a contract (as Regions is here) can invoke the UPAA to say, in essence: "Even if the facts plaintiff alleges are true and would ordinarily give rise to liability, they don't in this case because I relied upon an acknowledge power of attorney in taking the challenged action and lacked actual knowledge that the power of attorney was being misused."

Importantly, however, "[t]he *defendant* bears the burden of proving an affirmative defense"—the plaintiff is not required to disprove it. *Id.* (emphasis added). Thus, it is Regions' burden to show (and thus, emphatically not Plaintiff's burden to disprove) (1) that it relied on the power of attorney in adding Levinson to Tolliver's account and (2) that it lacked actual knowledge that Levinson was misusing the power of attorney when adding her to the account. After the parties conduct discovery on these issues, Regions may move for summary judgment if appropriate.

### C. Dismissal of Plaintiff's EFTA Claim Would Be Premature

Plaintiff claims Regions violated the EFTA by (1) permitting unauthorized electronic fund transfers by Levinson; (2) failing to send periodic account statements to Tolliver from April 2017 onward; (3) failing to investigate and respond to Plaintiff's inquiries into potential

unauthorized electronic fund transfers; and (4) failing to refund the money spent from Tolliver's account by Levinson. (Doc. # 1-1 at 55, ¶ 14; 62-63, ¶ 33). At least some of these allegations state a claim under the EFTA.

The EFTA requires banks to investigate and correct errors relating to electronic fund transfers when notified of the error by a customer. *Merisier v. Bank of Am., N.A.*, 688 F.3d 1203, 1209 (11th Cir. 2012). Among the "error[s]" for which a bank may be liable are "unauthorized electronic fund transfer[s]." 15 U.S.C. § 1693f(f)(1). When a customer believes an unauthorized transfer has occurred and notifies her bank, "the bank has a duty to 'investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days.'" *Merisier*, 688 F.3d at 1209 (quoting 15 U.S.C. § 1693f(a)). "The bank must correct any detected error within one business day after such determination." *Id.* (citing 15 U.S.C. § 1693f(b)-(c)). "A bank that does not so comply may be liable to the customer for damages." *Id.*; 15 U.S.C. §§ 1693f(e), 1693m(a).

Plaintiff's claim for damages under the EFTA stems from the allegation that Levinson made unauthorized electronic fund transfers from Tolliver's Regions account. The EFTA defines the term "unauthorized electronic fund transfer" to mean the following:

> [A]n electronic fund transfer from a consumer's account initiated by a person other than the consumer **without actual authority to initiate such transfer** and **from which the consumer receives no benefit**, but the term does not include any electronic fund transfer (A) **initiated by a person other than the consumer who was furnished with** the card, code, or **other means of access to such consumer's account by such consumer**, unless the consumer has notified the financial institution involved that transfers by such other person are no longer authorized, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or (C) which constitutes an error committed by a financial institution.

15 U.S.C. § 1693a(12) (emphasis added).

Thus, Levinson made unauthorized transfers from Tolliver's account if she did so (1) "without actual authority" to initiate the transfers and (2) Tolliver "receive[d] no benefit" from the transfers. *Id.* But the transfers were not "unauthorized" if Tolliver "furnished" Levinson with "other means of access" to his account. *Id.*

Regions makes three arguments in support of its motion to dismiss the EFTA claim. First, it argues all of the electronic fund transfers at issue were "authorized" by virtue of the power of attorney and thus cannot form the basis of an EFTA violation. Second, Regions argues it cannot be held liable under the EFTA for sending account statements only to Levinson and not also Tolliver. Third, Regions argues the EFTA does not apply to check transactions. The second and third arguments are correct. But the first argument, though it may ultimately prove correct, is premature at this stage of the case.

### 1. Whether the Transactions at Issue Were "Unauthorized" Under the EFTA

The electronic fund transfers of which Plaintiff complains were "unauthorized" under the EFTA if Levinson lacked *actual authority* to initiate the transfers and Tolliver received *no benefit* from the transfers, *unless* Tolliver furnished Levinson with "the card, code, or *other means of access*" to Tolliver's account. 15 U.S.C. § 1693a(12) (emphasis added). Plaintiff clearly alleges that Tolliver received no benefit from the (shopping spree) transfers Levinson initiated from his account. (Doc. # 1-1 at 55, ¶ 13). The only issue is thus whether Plaintiff has adequately alleged that Levinson (1) lacked actual authority to initiate the transfers and (2) was not given a means of access to Tolliver's account.

Though the complaint is less than stellar on this point, it alleges enough factual material to render an EFTA claim "plausible" at this early stage in the case. Specifically, the complaint states that Levinson "was *allegedly* appointed" as Tolliver's agent through the power of attorney

instrument, and it refers to "the authority *purportedly* granted" by the power of attorney. (Doc. # 1-1 at 53, ¶ 6; 63, ¶ d) (emphasis added). And, Plaintiff makes clear in her briefing on the motion to dismiss that she "disputes the authenticity" of the power of attorney and is unaware "of whether the notary recital is accurate and whether the deceased actually signed said document in the presence of said notary." (Doc. # 8 at 2). Plaintiff has thus made out a plausible allegation that Levinson acted without "actual authority" (because no valid power of attorney had been executed) when she added herself to Tolliver's account. Moreover, nothing in the complaint indicates that Tolliver furnished Levinson with "the card, code, or other means of access" to his account. 15 U.S.C. § 1693a(12).

Because the EFTA defines an "unauthorized" transaction as one made "without actual authority," and because Plaintiff alleges Levinson acted without actual authority in having Regions add her to Tolliver's account, dismissal at this stage would be inappropriate. Discovery is needed on whether Tolliver validly executed the power of attorney appointing Levinson as his agent, thereby giving Levinson actual authority to add herself to Tolliver's account.

One final point of clarification. The Alabama UPAA gives Regions complete immunity under *state* law if Regions relied on a purportedly notarized power of attorney without actual knowledge it was being misused—in other words, if Levinson acted with *apparent* authority under the power of attorney. But because of the Supremacy Clause, the UPAA (a state law) does not and cannot relieve Regions from liability under the *federal* EFTA. Thus, some limited discovery will be necessary to determine whether Tolliver in fact executed a valid power of attorney, thereby giving Levinson "actual authority" to add herself to his Regions account.

### 2. Whether Regions Can Be Liable Under the EFTA for Sending Account Statements Only to Levinson

Plaintiff separately claims that Regions violated § 1693d of the EFTA, which requires banks to "provide each consumer with a periodic statement" for each of the consumer's accounts capable of electronic fund transfers. 15 U.S.C. § 1693d(c). Specifically, Plaintiff alleges that from April 2017 onward (after Levinson was added to the account) Regions sent account statements only to Levinson and not to Tolliver. Regions responds that it cannot be held liable under the EFTA for sending account statements only to Levinson and not also Tolliver. Regions is correct on this point.

The EFTA's implementing regulations provide that, "[f]or joint accounts held by two or more consumers, a financial institution need provide only one set of the required disclosures and may provide them to any of the account holders." 12 C.F.R. § 1005.4(c)(2). The EFTA authorizes the Consumer Financial Protection Bureau to prescribe rules and regulations to carry out its purposes, 15 U.S.C. §§ 1693b(a)(1), 1693a(4), and Plaintiff has not challenged any of the Bureau's implementing regulations. Thus, Regions was not obligated under the EFTA to send account statements to both Tolliver and Levinson.

### 3. Whether the EFTA Applies to Check Transactions

Plaintiff also asserts EFTA liability based on unauthorized checks written by Levinson on Tolliver's account. (Doc. # 1-1 at 63). But the EFTA only applies to an "electronic fund transfer," which is defined in the Act as "any transfer of funds, *other than a transaction originated by check*, draft, or similar paper instrument, which is initiated through [certain mechanisms and authorizes] a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7) (emphasis added). Any unauthorized checks written by Levinson therefore cannot give rise to EFTA liability.

### D. Plaintiff Fails to State a Claim for Declaratory Relief

Lastly, Plaintiff's claim for declaratory relief does not invoke any substantive provision of state or federal law under which she asks the court to declare the parties' rights. Instead, the count for declaratory relief simply asserts that Regions has refused to turn over documents relating to Tolliver's account and requests "an accounting of said funds and a declaration of the parties' rights." (*Id.* at 61-62, ¶¶ 28-30). This does not state an independent claim for relief. The Declaratory Judgment Act creates a *remedy* by which federal courts "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). But the Act is procedural only and merely creates a new remedy available to district courts; it does not supply an independent cause of action which may be asserted without mentioning the source of the law that creates the rights and legal relations the party wants the court to declare. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Thus, though Plaintiff may seek declaratory relief if she succeeds on any of her substantive legal claims (the breach-of-contract and EFTA counts), her stand-alone claim for declaratory relief is due to be dismissed.

## IV. Conclusion

For the reasons explained above, Regions' motion to dismiss (Doc. # 2) is due to be granted in part and denied in part. A separate order will be entered.

DONE and ORDERED this June 11, 2019.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE